[Civ. No. 2814. Second Appellate District, Division One.—June 15, 1920.]

JOSEPH J. GRISWOLD, Administrator, etc., Appellant, v. J. M. FRAME, Respondent.

[1] Promissory Note—Action on—Consideration—Money Paid to Maker as Gift—Evidence.—In this action on a promissory note executed by defendant to plaintiff's intestate, in which the defendant pleaded want of consideration, the testimony of the defendant, in connection with the testimony of the cashier of the bank from which the deceased obtained the money paid to defendant, was sufficient to warrant the inference that the deceased, when she delivered the money to defendant, delivered it either as a gift to him or in discharge of an obligation which she assumed rested upon her in connection with the distribution of property obtained from her mother.

[2] Id.—Want of Consideration—Payment—Parol Evidence.—While no evidence can be admitted to prove that a written contract which is plain and unambiguous in its material terms was intended to

impose greater or less obligations than those terms import, it is always permissible, however, to show the want of consideration for the making of a contract, or that the contract has been discharged by direct payment, accord, and satisfaction, or in any of the several manners by which parties may extinguish their contractual obligations.

[3] ID.—DECLARATIONS OF PAYEE — DECLARATIONS IN PRESENCE OF PAYEE—EVIDENCE.—In an action on a promissory note executed by defendant to plaintiff's intestate, in order to prove want of consideration, evidence as to declarations of the deceased is admissible, under subdivision 2 of section 1870 of the Code of Civil Procedure, and evidence as to statements of the mother of defendant and the deceased, made in the latter's presence during her lifetime, is admissible, under subdivision 3 of said section.

APPEAL from a judgment of the Superior Court of Tulare County. M. L. Short, Judge presiding. Affirmed.

The facts are stated in the opinion of the court.

Stephen G. Long, E. I. Feemster and Middlecoff & Feemster for Appellant.

Marley Fisher, Power & McFadzean and D. E. Perkins for Respondent.

JAMES, J.—This action was brought to recover on a promissory note. Defendant's defense of want of consideration was sustained by the trial judge, and the appeal is taken from the judgment which was entered in his favor.

Margaret E. Griswold was the sister of the defendant. Her first husband, Lumereau, died in the year 1909, and the promissory note in question was made on March 6, 1911, which was prior to the time that the sister married Griswold, who appears here as the administrator of her estate. The promissory note sued upon was among the effects of plaintiff's intestate. In establishing his defense of want of consideration for the making of the note, the defendant in substance testified that prior to the death of his and Mrs. Griswold's mother he had resided in Goldfield; that at the last illness of his mother, who resided with Mrs. Griswold (then Mrs. Lumereau), he was called home to Lindsay, California; that just before the death of his mother his sister urged him to buy an interest in a business at Lindsay, and that he re-

plied that it would require a thousand dollars more than he then had, and that she (Mrs. Lumereau) said, "I will get you the thousand dollars, if you will go in with him, . . . and I said, 'Well, I have got to go back to Goldfield, and while I am back there I will think it over and write what I will do,' and while I was back to Goldfield I was thinking over that matter, and got the second call that mother was worse, and then I came back. Q. And about when was it that she got the money and let you have it? A. It was some time in March, because I went in with him, I think, on the first of April of that year." He further testified that the money was obtained by Mrs. Lumereau from the First National Bank; that he was present when the arrangements were made for it; that his sister, Mrs. Lumereau, said that she would get the thousand dollars and let him have it, because it was coming to him from his mother's estate; that the note in suit was given by him at his sister's request; that "she told me that she would not take a note at all if she didn't have to keep her accounts straight, that she wouldn't exact the note at all, but she had things to attend to, that she had to keep straight, and consequently she thought it best to take a note; she said she would destroy it, or do away with it, when things were straightened up." Witness Reed, cashier of the bank at which Mrs. Lumereau obtained the one thousand dollars which she delivered to defendant, testified that Mrs. Lumereau obtained the money upon her own note from the bank as a loan; that he asked her what she was going to do with the one thousand dollars that she wanted to borrow, and she said, "My brother is figuring on going into business with Mr. Frame, or Mr. Forster, and I want a thousand dollars to help him pay for an interest, and this, that is the money that I owe him, coming from his mother's estate." This was all of the testimony covering the immediate transaction touching the giving of the note by Frame to Mrs. Lumereau. It was further shown in evidence that the mother of defendant and Mrs. Lumereau had at one time been possessed of a quarter-section of land, one-half of which she sold, the remaining half of which she conveyed to Mr. and Mrs. Lumereau by grant deed which instrument of conveyance indicated an intent that the grantees were to take the same as joint tenants with right of survivorship. Another witness, Sims, testified that after Lumereau's death

she had a conversation with defendant's mother in which the defendant's mother stated in substance that she had deeded the property to Mr. Lumereau, "and Mr. Lumereau had to take care of her as long as she lived. . . . She told me that herself, that she had deeded them eighty acres to Mr. and Mrs. Lumereau, to take care of her as long as she lived." Another witness, Waltenbaugh, testified that she occupied a close relation of friendship and as a business confidant with defendant's mother and Mrs. Lumereau, and that defendant's mother and Mrs. Lumereau once sent for her after Lumereau's death and that the mother, in the presence of Mrs. Lumereau, stated that "she had given Mr. Lumereau a deed to that place, in case she should become a burden in her old age he would record that deed after her death, but if he died first, that deed was to be divided among her four children, provided Jerry ever returned, and if not, between the three. But if she died first, it was their property, and when she went to sell it, she found he had recorded it without her knowledge or consent and without the knowledge of Mrs. Lumereau."

It is the contention of appellant that all of this testimony given as to statements made by the sister of the defendant (plaintiff's intestate) and the mother of defendant, is hearsay and incompetent. Further, that by his defense and the evidence offered to sustain the same the defendant attempted to vary the terms of a written contract, which the law does not permit to be done. [1] Leaving aside for the moment consideration of those questions and taking the testimony of the defendant in the view that it was competent, in connection also with the testimony of the cashier of the bank, it seems to furnish sufficient to warrant the inference that Mrs. Lumereau, when she delivered the one thousand dollars to defendant, delivered the money either as a gift to him or in discharge of an obligation which she assumed rested upon her in connection with the distribution of property obtained from her mother. To the statement of the facts as already narrated may be added the further one that plaintiff's intestate during all of the years which elapsed subsequent to the making of the note, made no demand on the defendant for the payment of any interest. [2] It is established law that where a written contract is plain and unambiguous in its material terms no evidence can be admitted to prove that it

was intended to impose greater or less obligations than those terms import. In other words, no collateral agreement of a different kind may be imposed by parol upon a plainly worded contract. It is always permissible, however, to show the want of consideration for the making of a contract, or that the contract has been discharged by direct payment, accord and satisfaction, or in any of the several manners by which parties may extinguish their contractual obligations. *Cohen* v. *Goux*, 48 Cal. 97, was a case where the defendant sought to show in his own behalf that a note was signed without consideration and as a mere accommodation to the plaintiff. The plaintiff objected that the note carried on its face a consideration and was the best evidence. The objection was sustained. The judgment was reversed, the supreme court saying: "That the defendant was at liberty, as against the plaintiff here, to show want of consideration for the making of the note, and that such want of consideration, if shown, amounted to a full defense to the action, are propositions too plain to admit of discussion." In *Treadwell* v. *Himmelmann*, 50 Cal. 10, the court said: "The evidence offered by the defendant in support of the special defense set up in the answer was improperly excluded. It did not contradict or vary the written instrument declared upon; on the contrary, the offer was to prove an executed parol agreement, in the nature of an accord and satisfaction. There is no difference in principle between this case and *Hapgood* v. *Swords*, 2 Bail. (S. C.) 305, which was an action on a promissory note; and the defense was that at the time of the execution of the note it was agreed by parol that if the defendant would procure a purchaser for certain land of the plaintiff at a specified price, the plaintiff would surrender the note; and the defendant procured the purchaser at the stipulated sum." The judgment in that case was reversed. In *Howard* v. *Stratton*, 64 Cal. 487, [2 Pac. 263], the court briefly disposed of a similar contention by saying: "The court erred in excluding evidence tending to prove that there was an agreement between Tyson and Stratton, by which the former agreed to let the latter have the rancho on which he lived in consideration of his giving Tyson a home and support during the residue of his life, and that the notes sued on in this action were given by Stratton to Tyson to secure the performance by Stratton of said agreement on his part,

and that he had performed the same. The admission of such evidence would not violate the rule which forbids the introduction of parol evidence to contradict or vary a written contract." (See, also, *Schultz* v. *Noble*, 77 Cal. 80, [19 Pac. 182].) In *Sprague* v. *Walton*, 145 Cal. 228, [78 Pac. 645], evidence as to declarations of a deceased husband was excluded where the wife was seeking to show that the interest of the husband in money deposited in bank had been transferred to her. The court there said: "But the superior court erred in excluding evidence of the oral declarations of Moses Sprague at and about the time he signed the orders upon which his wife drew the deposits. It does not appear from the bill of exceptions what was the particular reason for these rulings, but in the brief of respondent they are defended upon the ground that the effect of the declarations would be to contradict or vary the terms of the written orders. . . . The question here is not governed by subdivision 4 of section 1870 of the Code of Civil Procedure, but by subdivision 2 of that section." **[3]** This decision is very pertinent here as establishing the competency of the evidence as to the declarations of plaintiff's intestate. Subdivision 2 of section 1870 of the Code of Civil Procedure, referred to in the decision, provides that "the act, declaration, or omission of a party" is competent evidence against him. The statements of the mother of defendant, made in the presence of plaintiff's intestate, was competent evidence under subdivision 3 of the same section, which provides that testimony is competent of "an act or declaration of another, in the presence and within the observation of a party, and his conduct in relation thereto." (See, also, *Rice et al.* v. *Howland*, 147 Mass. 407, [18 N. E. 229]; 1 Greenleaf on Evidence, 16th ed., sec. 284.) We have already called attention to the fact that one of the witnesses testified as to declarations made by the mother with respect to the property that she had transferred to Mr. and Mrs. Lumereau. We do not concede that the testimony of the witness, Sims, as to the conversation with the mother of plaintiff's intestate and without the presence of Mrs. Lumereau, was competent; but that testimony was offered by appellant in rebuttal. If it were essential to the defense of the defendant to have shown that the Lumereaus were legally bound to account to him for the one thousand dollars represented by the promissory note as

a share of his mother's estate, we would be compelled to say that the evidence was insufficient to establish that legal condition. This for the reason that the deed given by the mother of defendant to the Lumereaus expressed no limitation or condition upon the quality of title conveyed and because the oral declarations made by said mother after the delivery of her deed and after the death of Lumereau would not be competent evidence to establish the fact claimed. We think, however, that the main question is not to be so resolved; that the question of the intent of plaintiff's intestate when she delivered the one thousand dollars to the defendant and took the note, is to be ascertained. The evidence seems sufficient to show that defendant's sister assumed at least to be under a moral obligation to give this money to the defendant. If the moral obligation existed alone and the legal obligation was absent, then the transaction would result in a gift induced by the view of Mrs. Lumereau that she should provide her brother with the money. If a gift were consummated, then the consideration was that of a gift and there would be left no further consideration to support the promissory note, for the transaction in which it was given would already have been fully executed on both sides. We are satisfied that the evidence is sufficient to sustain the findings, and that the trial judge committed no prejudicial error in the rulings made during the course of the trial.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.